**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ALAIN ETIENNE KABERT | : | |
|    Petitioner | : | |
| | | |
| v | : | Civil Action No. DKC-05-1591 |
| | | |
| I.C.E. | : | |
|    Respondent | | |

. . . .o0o. . . .

**MEMORANDUM**

    The above-captioned petition for writ of habeas corpus was filed on June 10, 2005. Petitioner is confined to the St. Mary's County Detention Center in the custody of United States Immigration and Customs Enforcement (ICE) pursuant to a final order of removal from this country. Respondent has filed a motion to substitute party and answer seeking dismissal of the petition. Paper No. 4. Upon review of the papers filed, this Court finds that a hearing in this matter is unnecessary. For the reasons that follow, the motion to substitute party shall be granted and the petition for writ of habeas corpus shall be dismissed without prejudice.

    Respondent moves to delete Immigration and Customs Enforcement as Respondent and substitute Timothy Cameron, the warden of St. Mary's County Detention Center, as the proper Respondent in this action. Paper No. 4 at p. 2. Petitioner is currently incarcerated at St. Mary's County Detention Center and is seeking judicial review of his continued detention pending removal. Warden Cameron, as the warden of St. Mary's County Detention Center, is the proper Respondent and the Motion to Substitute will be granted. *See Rumsfield v. Padilla*, 542 U.S. 426, ___, 124 S. Ct. 2711, 2717 (2004) (proper respondent in habeas corpus proceedings is the person who has immediate custody of the person detained).

Petitioner is a native and citizen of the Ivory Coast. He attempted to enter the United States under the Visa Waiver Program on October 31, 1999, using a French passport which did not belong to him. Upon being denied admission to the United States, Petitioner told authorities he feared returning to the Ivory Coast and his case was referred to an Immigration Judge for an asylum hearing. Paper No. 4 at Ex. A. On January 9, 2001, Petitioner's request for asylum was heard and subsequently denied by the Immigration Judge. *Id*. at Ex. B. An appeal to the Board of Immigration Appeals resulted in an order dated March 18, 2003, affirming without opinion the decision of the Immigration Judge. *Id*. at Ex. C.

On November 30, 2004, Petitioner was arrested by ICE officers after an unsuccessful attempt to avoid apprehension. *Id*. at Ex. D. Within two weeks of his arrest, ICE sent letters requesting travel documents to the Embassies for the Ivory Coast and France. *Id*. On December 23, 2004 the French Embassy notified ICE that the requested travel documents would not be issued by that country because they did not believe Petitioner to be a citizen of France. *Id*. On February 4, 2005, the Embassy of the Ivory Coast requested that a travel itinerary be set up for Petitioner before travel documents were issued. *Id*. Based on that representation, a decision to continue Petitioner's detention was issued on February 15, 2005. *Id*. A travel itinerary was set up and Petitioner was scheduled to be removed to the Ivory Coast on March 14, 2005. Travel documents were not issued in time to effect that removal. *Id*.

Although a second travel itinerary was set up for removal on April 5, 2005, travel documents again were not issued. Petitioner was interviewed by an Embassy official on March 31, 2005. Based on that

interview, the official did not believe Petitioner to be a citizen of the Ivory Coast[1]. *Id*. Two requests April 14 and 26, 2005 were made to ICE Headquarters for assistance in obtaining travel documents on. *Id*. Negotiations with the Ivorian Embassy have continued; ICE officials have been informed that travel documents could not be issued unless Petitioner's identity could be verified through presentation of a valid passport or a birth certificate. *Id*. at p. 3. Petitioner's brother, Sery Kabert, was contacted by ICE officials on June 7, 2005, in an effort to obtain a copy of Petitioner's birth certificate. *Id*. at p. 4. Though assurances of cooperation were given by Mr. Kabert, ICE officials have not yet received the needed documentation. Despite the problems encountered in obtaining travel documents for Petitioner's removal to the Ivory Coast, Respondent assures this court that, based on past experience[2], the documents will ultimately be issued by the Ivorian Embassy.

Petitioner challenges his continued confinement pending removal. The decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) governs the issue of whether an alien's detention pending removal is constitutional. In *Zadvydas*, the Supreme Court held that post-removal order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about the alien's removal from the United States and does not permit indefinite detention. In sum, the Supreme Court found that after an order

---

[1] There is no evidence in the record before this Court regarding why Petitioner's citizenship is being questioned by the Embassy.

[2] Deportation Officer Greene asserts in her affidavit that she has been successful in obtaining travel documents from the Embassy of the Ivory Coast on one occasion and that she can not recall a single case where the Ivory Coast ultimately refused to issue a travel document. Paper No. 4 at Ex. D, p. 4.

of deportation became final, an alien may be held for a six month period.  After this period:

> "[o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

*Zadvydas*, 533 U.S. at 700.   The purpose of detaining a deportable alien is to insure his presence at the moment of removal. *Id*. at 697–99.   In cases where it is unlikely that removal will occur, detention of the alien no longer serves this purpose.  *See Clark v. Martinez*, __ U.S. __, __, 125 S. Ct. 716, 726 (2005) ( where repatriation negotiations for removal of inadmissible aliens to Cuba had ceased, removal was not reasonably foreseeable).  Refusal to cooperate with officials can not be the basis for finding that removal is not likely to occur in the foreseeable future.  *See e.g. Pelich v. INS*, 329 F. 3d 1057, 1060 (9th Cir. 2003) (detainee can not argue that removal is unlikely when his decision to cooperate is the controlling factor).

In the instant case, negotiations are ongoing and the delay in obtaining the necessary travel documents is due in part to the absence of identification documents.  It is, however, unclear whether Petitioner has any ability to provide that identification.  Although Respondent seems to imply that Petitioner has caused Embassy officials to question whether he is a citizen of the Ivory Coast, no rationale has been

provided for the doubts raised following his interview. There is insufficient evidence to find that Petitioner has failed to cooperate with efforts to effect his removal. Petitioner's attempt to elude apprehension by ICE officers, however, is evidence that his detention is necessary to insure his presence at the time of removal. In light of the fact that arrangements for Petitioner's removal have not been finalized, Respondent will be required to file a status report 60 days from the date of this decision and the petition for writ of habeas corpus shall be dismissed without prejudice[3].

July 27, 2005   /s/
Date            DEBORAH K. CHASANOW
                United States District Judge

---

[3] Depending upon the information contained in the status report, Petitioner may choose to seek habeas corpus relief in this Court, reasserting his *Zadvydas* claim.